This is number, case number 4-13-0357, People's State of Illinois v. Del Largo Gullens. For the appellant, we have Attorney Burkhardt. For the appellee, we have Attorney Majors. Mr. Burkhardt, you may proceed. My name is Matthew Burkhardt. I'm a private attorney. I practice in LaSalle County, LaSalle, Illinois. I'm here today on behalf of the Senate, Del Largo Gullens, who after a jury trial was convicted and found guilty of possession of an infanticidal substance. I'm presently serving a 30-year sentence in the Illinois Department of Corrections. The issue and the point I most want to stress to the Court, and the point I most wish to defend and the questions that the Court may have, is that this is a case that should be analyzed under the second prong of the Plaintiff Error Doctrine because it affects the substantial right of the defendant to his right to a fundamentally fair trial. The judge's comments that she made to the defendant's attorney on the 26th and 27th are strongly suggestive of extrajudicial information that the judge had acquired by talking to other people in the community about the defendant, and if not, she at least created the appearance of impropriety by her comments to the defendant's attorney. For example, this was earlier, and I imagine that the Court has read the statement of facts of this largely contentious trial between the defendant's attorney and the judge. Anyone who has read the case statement of facts or is in any manner familiar with the facts of this case can most definitely conclude as an axiomatic truth that the judge and the defendant's attorney did not belong. During the course of the trial... Therefore what? What does that mean? What's the significance? Assuming you're right. It has no more significance other than just as a background for the Court to understand the judge's comments. The comments in themselves, Your Honor... I've had, you know, you're looking at trial lawyers and trial judges here. I've had lots of trial lawyers about whom that might have been said of me when I was a trial judge, particularly if they weren't paying attention to my instructions or orders, as happened here with the lawyer for the defendant at the trial level. I probably got a little snippy, just as this trial judge did. But, therefore, what? There's nothing, therefore, about... There's nothing that I wish to conclude from it other than just to give it as background to the comments that the judge has made. Because the comments that the judge made to the attorney suggest... When she talks, for example, on the number 26, that everybody in the town knows when you're in town, knows what kind of car that you're driving, and knows what your website is, can see you're abroad and grew an entire community... So she could only have said that, the inference is compelling, she could only have said that if she somehow took a poll at the local cafe? Either she talked to other people and formed a consensus, either she went down to the parking lot and noticed his Bentley, noticed his license plate on her own initiative, without any assistance, she researched his website on the internet by herself, and contributed that to the whole community. Everyone knows what your website looks like, everyone knows what kind of car you drive, everybody knows when you're back in town. Those comments weren't heard by the jury, though, were they? Yes, but that's not... That's a very good point. It shouldn't matter whether or not the jury heard these cases, because they give rise to the appearance of ex parte communications, communications about the defendants, at least the defendants' attorney, if not the defendant himself, and that this ex parte communications gives rise to the appearance of impropriety. It shouldn't matter whether or not the jury heard it, because, for example, in the case of Bradshaw that I cite for the court, this was an instance where, in an attempted murder case, the victim's mother worked for the sheriff's department in the same building that the judge was presiding over the trial, against the people charged with her attempted murder. The victim's mother was working in the courthouse as his deputy sheriff. She contacted the judge through an intermediary, and the judge met with her. He said that as soon as he found out that she was related to the victim in the case, he told her that she couldn't talk with him. This was a case where the jury didn't hear anything about this. The trial proceeded, and the court made known that there was enough evidence to convict him beyond a reasonable doubt. But you cannot have a systematic structural error in the trial where the judge has created the appearance of impropriety by these type of statements that she made to the defendant will strongly suggest that she had either been talking with other people or she created the impression that she had been. This is a structural violation of the second prong of the Plain Fair Doctrine which mandates a reversal. It shouldn't matter that the jury didn't matter. In Bradshaw, the jury didn't see it happening in Bradshaw at all, and it didn't even seem to impact the evidence. But ex parte communications are a structural violation. Well, we don't have any ex parte communication here. We have your argument that an inference can be drawn from what you said. And it could be, I recognize your car, and I recognize your website. Everyone knows your car. It's a matter of a figure of speech without checking to see if that's true. But it's just so obvious, she might say, not many people driving a Bentley to Pontiac, Illinois, and parking in front of the courthouse. Why isn't that at least as reasonable an inference from the court's remarks? If it was just that, but it's also the website, the fact that he bore the license plate name maker, that people knew that he was coming and going. Well, the license plate is on his car, isn't it? If you could see his car parked in front of the courthouse in Livingston County, there it is. The fact that she's used weed, the fact that she's been in the community, and through her statements, and that everybody in the county knows you were here. So that can only mean that she's consulted other people to make that? Doesn't mean it, but the appearance that she may well have, And we should reverse on that basis, even though, of course, there was no mention raised at the trial level, so the court could have said, if it were true, oh, no, I never talked to anyone about that. That's a matter of figure of speech. It was so obvious to me, I figured it was obvious to everyone. Well, the judge had an opportunity to do that. At the hearing on the motion to reconsider the errors committed in the trial, the defense attorney stated how he reacted to the judge's comments, what they meant to him, how he felt that when he was in the town. Did he raise this argument to the judge at that time that you're raising to us now? Yes, he did. He said to the judge that when he came into the community, it's quoted verbatim in my first brief, he said that when he was in the town originally, he always thought that everyone was looking at him, was afraid to come into the town. Counsel, I'm not being clear. Did he raise the argument about, judge, you talk to people about me? No, he didn't. Isn't that the argument you're now raising? I'm not raising that argument. Yes, but this is a plain error. So he didn't raise that argument to the judge? Not directly. Not directly? Did he do it indirectly? He was telling how he was reacting to the judge's comments. Would there be any impropriety in the judge's comments if she hadn't spoken to people in the community? If there was no basis for ex parte commentary. If she was hermetically sealed from everyone else and she had promised... No, not hermetically sealed. You're arguing she spoke to people about the defense counsel in the community. What if she hadn't done that? If she hadn't done it, it shouldn't matter because she created the impression that she had. A reasonable person looking at the words that she used could easily infer from her comments that she had been talking about the attorney with other people. And this is sufficient under Bradshaw. Bradshaw was a prophylactic type of case that said that just the appearance, just the appearance itself was enough to show that there's a structural error mandating reversal. Only the appearance. Didn't need anything more but the fact that she appeared, that the victim's mother appeared in the chamber with the judge for even two seconds. And even the judge himself in that case said that as soon as he found out who she was he terminated the conversation. There was nothing there. There was nothing there to suggest that there was any comments. And even the judge himself said he was not prejudiced. Did not, did not himself, recuse himself from the case. But continued to preside over the case which resulted in a conviction in the California court reversed. Were they right to do so? Oh, absolutely the court was right to reverse. Those facts in Bradshaw, the First District case of 1988 are the same as we have here? It's substantially similar because the appearance that people tried to recreate it by the unnecessary, injudicious, and extrajudicial information that the judge had acquired and infused into this case incorporated the sentiment of the community. And if she had just been using it as a figure of speech she used it two days in a row. She spoke of the community and how everybody in the community knew when he was in town. That's hard to imagine that could be a figure of speech. Mr. Burkert, can I ask you another question? We have two cases that have been consolidated. One is the dismissal of the 214-01 petition. Have you abandoned that? Yes, we have, Your Honor. We have abandoned that. I have discussed it with my client. I have his written permission not to pursue that aspect. That's the 14-01-F. No, Your Honor, we're not... We decided to abandon that. All right, so we can basically just dismiss that? That's right, Your Honor. Okay, thank you. That's correct, Your Honor. And this is sufficient. The judge didn't have to apologize at all. I can appreciate what the state is saying that you have to use the comments about the judge in the context of the trial. Earlier, they've been asking questions that are based upon facts that were not in evidence. The judge appropriately sustained the objections against him. He persisted in his efforts in asking these questions  with contempt of court. The next day, she thought, after an attorney was chastised, it seems like many times a judge will want to pry this up, try and smooth things over, pry the place involved. And that's when she made these other comments. And during the course of these comments, what she didn't really have to make was she went too far and gave rise to the implication that she had been discussing at least the defendant's attorney with other people and possibly the defendant himself without the defendant being there or his attorney being there. It shouldn't therefore matter whether the jury heard the judge's comments or not. That's not the issue. The issue is the occurrence of impropriety that's been created by the judge's comments, which has nothing to do with whether or not it affected the evidence or whether the jury saw it at all. This is a structural error. And the comments and possible communications gives rise to a lot of evil speculation that you can imagine things going on that will continue to haunt the validity of this case forever unless the defendant is given another chance and another trial, which is what we're hoping. That's all I have. Thank you, Counsel. You have another opportunity on rebuttal. Thank you. Mr. Majors. May it please the Court, Counsel, I think as Justice Knighton has already pointed out, they made no attempt to call any witnesses or make any offers of proof as has been done in all the other cases that have been tried. No descriptions of what occurred in the record. There was a post-trial motion, but it was filed in an untimely fashion. Of course, the court procedure was not binding on the court. But I think it's worthy to note that in the post-trial motion, which was untimely and therefore not considered, although it was just canceled anyway for the record, Mr. Goldberg doesn't talk about the appearance of hypocrisy or anything. He talks about a chilling effect on his advocacy. No discussion about ex parte communications? No. And I sound like a broken record, but what I've said over and over in my briefs is, how were you killed? What were you prevented from doing? What witness did you not allow to call? What question were you not allowed to ask? And they still haven't answered it. So there was a chilling effect. If you look at the record, these types of exchanges occurred in the course of the trial. The judge has inherent authority to control her own courtroom. The judge is the policeman in the courtroom. Mr. Goldberg was asking the same question four or five times when the judge finally stopped him. They had a conversation outside the presence and certainly outside the hearing of the jury. There's no question about that. I may, this is a reply brief, just read a few sections here. As to what theory they're raising, I'm not sure. They seem to be raising now, in contradiction of the post-trial motion, in contradiction of the first brief, they seem to be saying it's just an appearance of impropriety. But this is the reply brief. This is at the top on page three for your staff. That'll be brief. To be sure, the defendant is urging the rebellic court to adopt the second prong of the plain air doctrine when considering the judge's personal comment. That's not an appearance of impropriety. Going down a little bit on the same page three, the way the evidence was not discussed in the defendant's initial brief and will not be discussed now. On page six of the reply brief, the defendant takes notice, for example, of the state's argument for the correctness of the judge's decision to warn the defendant's attorney with a contempt citation if he persisted in asking questions that assumed facts and evidence and that the judge, with her comments, meant only to esponge, if I'm pronouncing that right, the wounded ego of an attorney who had just been chastised. However, the defendant, in his initial brief, seemed to challenge the sufficiency of the judge's decision to warn the defendant's attorney with contempt for calling into question the sincerity of the judge's motives by her comments. This is the reply brief again. One of them. Page 11 in the middle. Like in Bradshaw, in the instant case that barred the comments by the judge, Mr. Goldberg referred to outside the hearing and consideration of the jury and did not appear to have influenced the documentation. So, at the last minute in the reply brief, almost on the last line, they come up with this theory, a la Bradshaw, first district case from 1988. Bradshaw wasn't mentioned in the initial brief? No. No, there's only two cases, Mays and Zag. I have trouble with new names. Zagamy or something. In Mays, the judge slammed down a pencil while the defense counsel was interviewing a witness about the mental stability of a drug informant and made faces to the jury. In that case, the court testified that she was startled at the judge's slamming of the pencil and the defense counsel testified that the judge made faces to the jury. And they said that prejudiced the defendant before the jury and therefore they sent her back to another trial. Well, they admitted her. Over and over and over again, nothing occurred in the presence of the jury. The jury heard nothing, saw nothing. In that Zagamy case, I know I'm mispronouncing that, the judge interjected herself into the trial. The jury trial started calling the defense witness alive. Well, counsel, what justifies the trial court referencing the defense counsel's bent plea and the fact it has a license plate that says Rainmaker? Well, I'm looking at this in the original defendant's brief here. The end of that is so we know that you know what the rules of evidence are and how to try a case. Are you suggesting that the defense counsel drives a Bentley? By golly, that attorney must know how to try a case. I mean, that's what I read. If she was in a colloquial way saying, you're a high-profile, experienced defense lawyer, we know you know it's improper to ask these kinds of questions four or five times in a row when I've told you something. Well, I don't have any problem with that comment. I don't know what the car and the license plate has to do with it. Well, I could have been said better. There's no question about that. I mean, the comment would be better without those references. But their arguments, I don't know what they are. One, this had a chilling effect on me. This comment had a chilling effect. I don't know. What is it? How did it chill you? We don't know. Two, it's plain air. Okay, how are you prejudiced? Now, at the last minute, they come in and say, oh, well, it's the appearance of impropriety. I don't know. So how do I get those comments added to that? I think she used the pronoun we. Well, let me ask you this. If it, just hypothetically, if it did give the appearance of impropriety, would the state have a problem here? Well, it certainly doesn't rise to the level of this Bradshaw case where you have a death penalty case, a murder case, one of the defendants represents himself, and you have a jury involved. It's not clear as to, and then again, they had hearings. They had testimony that a mother saw this other mother go in with a note. We don't have anything like that here. I mean, if you look at the reply brief again. Well, were the comments made, clearly made outside the presence of the jury, at least most of them? Was it a sidebar? That's one point there. I think it was out of the hearing, although if the record says out of the presence, everybody agrees it was outside the hearing. What I'm getting at is, did the public even know about these comments? And does that make any difference when we're talking about the appearance of impropriety? In all these cases, they cite some effort to get a witness on there or make an offer of proof or some way to say what actually happened. This is just smoke and mirrors. If you look at page three of the reply brief, they talk about specters, they talk about haunting. On page six, they say that it creates an appearance to the unknown, the unknowable, the unquantifiable, the impermissible, and they go on like that. Well, where is it? I'm still waiting. What question did you not get to ask? What witness did you not get to call? What argument did you not get to make? What did the jury see? We don't know. I mean, because they don't know, we don't know, because they don't tell us we don't know. All right, any questions? Thank you, Mr. Majors. Any rebuttal? Yes, Your Honor. Burkhart? I did realize, Your Honor, that I did not cite Bradshaw. This was unintentional as a result of additional research after I filed the original brief. I had mentioned that in my reply brief. There is continuity in my brief. As I do, I strongly urge that the judge's comments give rise to so many questions. When, how, and where the judge came by this information, how could she have known, based upon what I have learned, which begs the question from whom she learned it. Counsel, you don't raise any question in your initial brief that there is somehow an impropriety, ex parte conversation. It's essentially what you argued to this court in your earlier remarks. You talk about the court's comments to the defense attorney, but you do so in a context entirely different, concluding, for instance, in your last paragraph, in the final analysis, the judge's impermissible statements made to the defendant's attorney, derived through and by impermissible means, diminish the ability of the attorney to do his job, resulting in deniable third and impartial trials of the defendant. You didn't even mention that in your earlier portion, and it sounds to me, as Mr. Mitch has pointed out, that this is essentially a reply brief argument, isn't it? It's a reply brief argument. In violation of Rule 341H, which says you can't raise new matters in a reply brief. I think it's a refinement of my argument. I think one of the natures of formal argumentation is that your argument is going to be more refined when you respond to criticism. The continuity of my argument of appearance is still in effect. What I meant to imply by these statements is that the judge was reacting to the implications present in the judge's comments that more people have discussed the defendant. I do believe that the state has taken a lot of my comments out of context in this argument today. What I was trying to suggest is that by restarting broad comments that the judge made concerning the defendant's car, misattributing statements that he made during this opening argument, and all this other information, all of this other personal information that the judge conveyed to the defendant's attorney during the course of trying to apologize to me, is a very strong indication that she had been discussing the case with other people. And this argument was made in the initial brief as well. The words ex parte don't appear in your initial brief, do they? Yes, they do, Your Honor. Where? Yes, several places. Well, I'm looking. Maybe I missed it. They're there, Your Honor, I know. In the course of the argument, I used the term ex parte. I can find the exact location. Well, I mean, if it's there, I'm just looking right now. You talk about I and we, and the court used we. That's right, Your Honor. But that's not the term ex parte, which is what I asked you. Yeah, but it's here, Your Honor. Okay, well, if it's there, it's there. I'll find it. Go ahead. Okay. And I realize that Bradshaw, like I mentioned earlier, but I mentioned that in my response brief, Your Honor, that this was unintentional recidivization of information. And I assume you have the most controlling authority to support my argument. Thank you, Your Honor. Thank you, Mr. Burkhart. I take this matter under advisement and be in recess.